IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cecil Fitzgerald Jamison, ) | C/A No. 0:11-2245-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Dir. Willie Bamberg; Asst. Dir. Dozier; Chief ) | **REPORT AND RECOMMENDATION** |
| James; Capt. Govan; Capt. Ryant; Lt. Jarrette; ) | |
| Ms. Sebasco; D/O Ms. J. Williams; Sgt. ) | |
| Woods; Capt. McKutchen; D/O N. Johnson; ) | |
| Nurse Webber; Nurse Kroger; D/O Livingston; ) | |
| Corp. Rawls; John D. Appleton, *President ABL* ) | |
| *Management*; Vincent Rose, *Director of* ) | |
| *Operations*; John Doe, *CEO ABL* ) | |
| *Management*; Ms. Kinard, *ABL Kitchen* ) | |
| *Manager*; Ms. Davis, and Ms. Jane Doe, ) | |
| *Kitchen Supervisor ABL*; *all in their individual* ) | |
| *and official capacities*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Cecil Fitzgerald Jamison ("Jamison"), a self-represented pre-trial detainee, filed this action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the motion for summary judgment filed by Defendants Appleton, Kinard, and Rose ("ABL defendants")[1] (ECF No. 57), and on the motion for summary judgment filed by the remaining sixteen defendants[2]

---

[1] The defendants state that ALB Management, Inc. ("ABL") is a national company that provides food services for correctional facilities, including the Orangeburg County Regional Detention Center. (Defs.' Mem. Supp. Summ. J., ECF No. 57-1 at 2.)

[2] It appears that Defendants John Doe (CEO ABL Management) and Ms. Jane Doe (Kitchen Supervisor ABL) were never identified or served with process. Accordingly, the court recommends that these defendants be dismissed from this action without prejudice. See Fed. R. Civ. P. 4(m).



("Detention Center defendants") (ECF No. 60). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Jamison was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF No. 62.) Jamison filed a response in opposition (ECF No. 81), and the defendants filed replies (ECF Nos. 82 & 83). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motions should be granted.

## BACKGROUND

Liberally construed, Jamison's Complaint raises claims on a myriad of issues that occurred while he was housed in the Orangeburg County Regional Detention Center. He first alleges that his First Amendment rights were violated when he was not provided with a kosher diet and, subsequently, a House of Yahweh diet. Further, he alleges that the meals that he did receive were not to his liking. He also appears to allege that he was wrongfully denied a hearing for a disciplinary infraction. Jamison also alleges that he did not receive proper medical care for injuries to his finger and wrist. Additionally, he alleges that certain items from a personal mail package were never delivered to him, and that personal mail sent from the detention center by Jamison was not received by the intended recipients. Finally, Jamison appears to allege that the defendants failed to comply with the detention center's grievance policy by not responding to his grievances. Jamison seeks monetary damages, requests that the defendants be required to attend classes on kosher meals, and requests that the defendants be suspended without pay or fired.



# DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,



e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.   **Defendants' Motions for Summary Judgment**

   1.   **Exhaustion of Administrative Remedies**

As an initial matter, the defendants claim that Jamison failed to properly exhaust his administrative remedies in accordance with the detention center's grievance policy. (See Mem. Supp. Summ. J., ECF No. 57-1 at 9-10 & ECF No. 60-1 at 10.) However, Jamison states in his verified Complaint that although he has filed multiple grievances, he has not received responses from the defendants. (Compl., ECF No. 1 at 2, 26-27.) He further states in response to the defendants' motions for summary judgment that "[the defendants'] attempt was to not allow me to exhaust my administrative remedies by not answering any of my grievances." (ECF No. 81 at 1.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Stenhouse v. Hughes, 2006 WL 752876, at *2 (D.S.C. 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."). Accordingly, the defendants have not shown that they are entitled to summary judgment on this basis.

To the extent that Jamison alleges that the his due process rights have been violated by the defendants because his grievances were not processed, such a claim fails. Prison inmates, including local detention center detainees, have no federal constitutional right to have any inmate grievance



system in operation at the place where they are incarcerated.  See, e.g., Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994).  Furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees.  See Mann, 855 F.2d at 640.  As a result, even if corrections officials fail to properly apply an inmate grievance procedure, as Jamison appears to allege, such failure is not actionable under § 1983.  Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va.  2000).

### 2. Official Capacity Claims

To the extent that Jamison is suing the Detention Center defendants in their official capacities for monetary relief, they are entitled to summary judgment.  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. art. XI.  Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").  As arms of the state, the Detention Center defendants are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity.  See Will, 491

U.S. at 70-71; Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (concluding that sheriffs and deputy sheriffs are agents of the state and cannot be sued in their official capacities). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the Detention Center defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 3.     Deliberate Indifference—Medical Treatment

To the extent Jamison seeks relief against the Detention Center defendants in their individual capacities with regard to his medical treatment, his claims fail. The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." Estelle, 429 U.S. at 105. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a detainee and disregards that substantial risk. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). The government is required to provide medical care for incarcerated individuals. Estelle, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn,

896 F.2d 848 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice.  Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."  Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Jamison has failed to meet the requisite showing from which a reasonable jury could find deliberate indifference to his medical needs.  Jamison's chief allegations with regard to his medical care appear to be that he did not receive proper medical treatment for a "fractured joint" on his right finger and a cut on his right wrist.  (Compl., ECF No. 1 at 13, 19.)  With regard to the individuals

named as defendants in his Complaint, Jamison alleges that Nurse Webber[3] did not order x-rays of his injured finger. He also generally alleges that the detention center medical staff did not timely provide him with a splint and appears to allege that his finger is "still fractured and hurting." (Id. at 13.) Jamison also alleges that when his wrist was injured, Nurse Kroger[4] "cleaned it, and tap[]ed it shut, and then put a large band-Aid on it, that's it." (ECF No. 1 at 19.)

In support of the responsive action taken by the medical staff and the individual defendants, the defendants have provided affidavit testimony from Bena C. Weber, the Nursing Supervisor at the detention center, and Loralyn Sue Coker, a licensed practical nurse at the detention center, as well as Jamison's medical records relating to his injuries. (See ECF Nos. 60-4, 60-6, & 60-9.) Weber avers that Jamison injured his right middle finger on February 13, 2011 when he sat on it. (Weber Aff., ECF No. 60-4 at 2.) She further states that Jamison, in addition to receiving daily pain medication, was treated on at least ten different occasions for his injury, including an x-ray that was ordered on February 16, 2011. (Id.) Weber states, and Jamison's medical records show, that the x-ray of his finger revealed no fracture, no dislocation, no radiopaque foreign body, no interstitial emphysema, and no evidence of arthritis. (Id.; Medical Records, ECF No. 60-9 at 6.) Weber avers that one of the detention center physicians gave Jamison a splint to wear on March 1, 2011, and that she personally treated Jamison on two occasions when she changed the tape on his finger splint and when she assessed the swelling and range of motion of his finger and referred him to a physician for further assessment and treatment. (Weber Aff., ECF No. 60-4 at 2.) Coker states that she also

---

[3] The court observes that the correct identification of Nurse Webber is Bena C. Weber, RN. (See generally Weber Aff., ECF No. 60-4.)

[4] The court observes that the correct identification of Nurse Kroger is Loralyn Sue Coker, LPN. (See generally Coker Aff., ECF No. 60-6.)



treated Jamison for his finger injury on two occasions when she changed the tape on his finger splint. (Coker Aff., ECF No. 60-6 at 2.) She further avers that Jamison presented to her on March 16, 2011, reporting to her that he had cut his wrist after tripping over a chain in a prison van. (Id.) Coker states that she cleaned the wound with a saline wash and applied steri-strips and a large bandage. (Id.) Both nurses opine that Jamison was treated with the appropriate standard of care. (ECF No. 60-4 at 3, ECF No. 60-6 at 3.)

Jamison's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Jamison was frequently seen and treated by medical staff for his complaints. Moreover, as stated above, Jamison does not have a claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Jamison's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To the extent that Jamison is seeking to raise state law claims of negligence or medical malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379,

381 (S.C. Ct. App. 1993). This requirement also includes nurses. See S.C. Code Ann. § 15-36-100(G). It is undisputed that Jamison has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against the defendants.

### 4. Food Service Issues

Jamison appears to raise allegations that both the Detention Center defendants and the ABL defendants violated his First Amendment rights by not providing him with a kosher diet and, subsequently, a House of Yahweh diet. Specifically, Jamison alleges that, upon arriving at the detention center on December 24, 2010, he requested to be placed on a kosher diet, but that due to a delay caused by "weather conditions," he did not begin receiving kosher meals until January 18, 2011. He also alleges that he requested certain incorrect food items to be substituted; that, on at least one occasion, certain food items were missing from his tray; and that he was not provided with salt, which he alleges is "required." He appears to allege that the ABL defendants were "trying to make kosher meals, vegan meals, by not giving [him] meat," but then states that "[t]he only meat that [he] was given is Tuna, and Sardine." (ECF No. 1 at 8.) Jamison further alleges that his food was cold, that it was served on plastic trays instead of individually wrapped on a Styrofoam tray, and that his food was not prepared in the correct manner. Jamison also describes several meetings with many of the defendants in which he alleges that he attempted to explain what his House of Yahweh diet required, but with which the defendants did not fully comply.

In support of their motion for summary judgment, the ABL defendants have provided affidavit testimony from Sharon Kinard, Food Service Director for ABL Management, Inc., who testifies that she was the highest ranking ABL employee working in the kitchen at the detention



center during the period at issue in Jamison's Complaint. (Kinard Aff. ¶¶ 3-4, 7, ECF No. 57-5 at 1-2.) She avers that ABL provides a standard menu to inmates at the detention center but that, on occasion, jail officials request ABL to prepare special menus for inmates due to medical needs or religious preferences. (Id. at ¶¶ 5-6, ECF No. 57-5 at 2.) Kinard states that Jamison apparently requested a kosher diet at some point after being detained at the detention center and that, per standard protocol, such request would have been sent to the jail nurse for approval within two weeks of an inmate's booking. (Id. at ¶ 8, ECF No. 57-5 at 2.) Kinard avers that, after receiving notification of approval, and since Jamison was the only inmate at the detention center at the time who had been approved for a kosher diet, she contacted Debra Craft, an ABL dietician, about the content of the kosher menu. (Id. at ¶¶ 9, 11, ECF No. 57-5 at 2-3.) Kinard testifies that she promptly made arrangements for purchase of the kosher food as specified by the provided menu; that she personally did the grocery shopping for Jamison's fresh vegetables; that she ordered special pre-packaged, individually wrapped kosher meals for Jamison; and that she personally prepared most of Jamison's meals, taking care to comply with the kosher diet requirements. (Id. at ¶¶ 10-12, ECF No. 57-5 at 2-3.) Kinard avers that, after several months of detention, Jamison specified that he should be receiving a House of Yahweh diet instead of a kosher diet. (Id. at ¶ 15, ECF No. 57-5 at 3.) According to Kinard, the ABL dietician contacted representatives at the House of Yahweh to discuss the dietary requirements and, after approval by detention center staff, Jamison began receiving the approved House of Yahweh menu. (Id. at ¶¶ 15-16, ECF No. 57-5 at 3-4.) Kinard avers that, "[a]t all times, the food served by ABL to Jamison met the requirements for his kosher and House of Yahweh diets." (Id. at ¶ 19, ECF No. 57-5 at 4.)



In support of their motion for summary judgment, the Detention Center defendants have provided the affidavit of Shirley A. Davis, a kitchen supervisor at the detention center, who avers that Jamison's meals were prepared in separate kosher pots and pans with kosher utensils, that he was served his meals from a kosher tray or a Styrofoam plate, and that he was given foods that met the requirements of his kosher diet and House of Yahweh diet. (Davis Aff., ECF No. 60-8 at 2.) Davis also avers that the ABL dietitian collaborated with Kohane Anayah, a dietician from the House of Yahweh, to ensure that Jamison's meals consisted of the correct foods and that those foods were properly prepared and served. (Id.)

An inmate retains rights afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Sahbazz, 482 U.S. 342 (1987). However, in Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. Specifically reviewing the issue of a kosher meal plan within the prison setting, the United States Court of Appeals for the Fourth Circuit found that the Maryland Department of Corrections's refusal to provide kosher meals did not violate an inmate's constitutional rights. Cooper v. Lanham, No. 97-7183, 1998 WL 230913 (4th Cir. 1998) (applying the factors established

in Turner v. Safley, 482 U.S. 78 (1987), and concluding that the refusal to provide religious-based meals was reasonably related to legitimate penological interests).

In the instant case, viewing the facts in a light most favorable to Jamison, he cannot show a violation of his First Amendment rights based on any failure on the defendants' part to immediately or precisely comply with his dietary needs. Although Jamison alleges that, initially, certain food items were incorrect, the record shows that the defendants approved Jamison's request for a religious-based diet and went to great effort in their attempt to provide Jamison with proper kosher and House of Yahweh diets. Even if the defendants initially erred, as Jamison alleges, by providing him with "bacon grits" and an incorrect type of bread, such error at most constitutes negligence, which does not rise to the level of a constitutional claim. See Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006) (holding that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause" of the Constitution). Accordingly, Jamison has failed to establish a claim that rises to the level of a First Amendment deprivation with regard to obtaining appropriate religious-based meals at the detention center.

To the extent that Jamison alleges that he experienced cruel and unusual punishment because the defendants did not provide him with food that he preferred, because of the food's temperature, or because of the lack of variety of his meals, his claims fail as a matter of law. Conditions of confinement of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535, 537 n.16 (1979); see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth

Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983) and Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992)). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81.

It is well settled that prisoners have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the



inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotations marks and citation omitted); see also Farmer, 511 U.S. at 833. The Constitution does not guarantee, however, food that is prepared and served in a culinarily pleasing manner. See Lunsford v. Bennett, 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); LaMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that a temporary diet of Nutraloaf did not rise to a constitutional violation); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); see also Williams v. Berge, 102 F. App'x 506, 507 (7th Cir. 2004) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]") (internal citations omitted). Prisoners simply cannot expect the "amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988); see also Lasure v. Doby, C/A No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. May 8, 2007) (noting that plaintiff was "being held in a [] jail facility, not a hotel").

Further, Jamison has not alleged any illness or injury or a substantial risk of such harm from eating the food that was provided to him. See De'Lonta, 330 F.3d at 634; Strickler, 989 F.2d at 1380-81; 42 U.S.C. § 1997e(e). Therefore, the defendants are entitled to summary judgment on these claims.

### 5. Disciplinary Convictions

Jamison also appears to allege that his due process rights were violated when he was put in "lock-up" without a hearing on January 21, 2011. Courts have held that "[a] pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an



opportunity to be heard; due process requires no less." Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002); see also Mitchell v. Dupnils, 75 F.3d 517, 524 (9th Cir. 1996) (holding that a pre-trial detainee who is placed in disciplinary segregation as punishment has a right to a due process hearing). Jamison's conclusory assertion that he did not receive a hearing based on his contention that the hearing officer had filled out the infraction form prior to the hearing, is insufficient to demonstrate that he was denied a due process hearing. See Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974) (discussing the elements of due process in a prison disciplinary proceeding, including (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) written findings as to the evidence relied upon and reasons for the disciplinary action; and (3) the right to call witnesses and present evidence in his defense, provided there is no undue hazard to institutional safety or correctional goals); (cf. Bamberg Aff., ECF No. 60-5 at 2; Notice of Infraction, ECF No. 60-5 at 10). Accordingly, the defendants are entitled to summary judgment on this claim.

**6.    Mail Issues**

To the extent that Jamison alleges any defendant mishandled his *personal* mail, resulting in missing property and correspondence, this allegation fails to rise to the level of a constitutional violation, as he has a meaningful post-deprivation remedy available under state law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Mora v. City of Gaithersburg, Md., 519 F.3d 216, 230-31 (4th Cir. 2008) (concerning the intentional taking of guns and ammunition from the plaintiff); Bogart v. Chapell, 396 F.3d 548, 561-63 (4th Cir. 2005) (finding that intentional destruction of the plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for the loss of animals). Moreover, the Detention Center defendants have provided affidavit testimony from Lourdes Sebazco-Andre, one of the correctional



officers at the detention center responsible for handling and inspecting inmate mail, who avers that pursuant to policy, all incoming non-legal mail is inspected for security reasons and to ensure the safety of inmates and employees. (Sebazco-Andre Aff., ECF No.60-7 at 1-2.) He further swears that inmate outgoing mail is not monitored or recorded by detention center personnel, but rather is collected by a correctional officer and placed in a bin for the United States Postal Service to collect. (Id., ECF No. 60-7 at 2.) Sebazco-Andre also attaches a portion of Jamison's mail log that showed receipt of a package from the House of Yahweh on May 25, 2011 that contained one book, one booklet, and a receipt that listed four books. (Id.; Mail Log, ECF No. 60-7 at 5.) Sabazco-Andre avers that, with the possible exception of packing materials, he did not take any items from the package, and that ACRDC mail policies and procedures were followed with respect to Jamison's mail. (Sebazco-Andre Aff., ECF No. 60-7 at 2-3.) Jamison has presented no evidence refuting the defendants' showing in this regard. Accordingly, the defendants are entitled to summary judgment on this claim.

**C.    Other Claims**

To the extent Jamison is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

### RECOMMENDATION

For the above reasons, the court recommends that the defendants' motions for summary judgment (ECF No. 57 & 60) be granted.

_____

November 28, 2012                                          Paige J. Gossett
Columbia, South Carolina                           UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).